## Case No. 451.

### ANONYMOUS.

[31 Hunt, Mer. Mag. (1855,) 206.]

PATENTS FOR INVENTIONS—ENJOINING—INFRINGE-
MENT—FRAUD—LACHES.

## Case No. 452.

### ANONYMOUS.

[37 Hunt, Mer. Mag. 707.]

District Court, D. Maine. March 2, 1857.

FEDERAL AND STATE COURTS—CONCURRENT JU-
RISDICTION.

[Where a ship is attached in a common-law suit in a state court by a lien creditor and is in possession of the sheriff, the subsequent filing of a libel in rem for materials furnished in building the ship does not work a conflict of jurisdiction between the state and federal courts, and the marshal has no power to disturb such possession, but by the statute of Maine, of August 10, 1848, c. 78, § 3, notice by the marshal to the sheriff that he has a warrant of arrest against such vessel operates as an arrest or attachment of the vessel, and the suits in the state and federal courts may be prosecuted concurrently to final judgment.]

[See note at end of case.]

[In admiralty. This was a libel in rem for the purchase price of certain materials furnished for the construction of a ship, which was at the time of filing of libel in possession by the sheriff, by virtue of an attachment issued in a common law suit. Heard on plea to the jurisdiction. Overruled.]

WARE, District Judge. This was a libel in rem by a material man, for the price of material furnished for the building of a new ship, to enforce the lien given by a statute of the state. Before the filing of the libel, a suit had been commenced at common law by another lien creditor, on which the ship was attached, and was in possession of the sheriff.

The right claimed by the libelant is not paramount to that of the attaching creditor, but concurrent with it. The sheriff having the legal possession of the ship, has a right, and is bound to retain it, and the marshal has no authority to disturb him in the possession. Both creditors are prosecuting their rights at the same time, and each in a court having jurisdiction over the suit. There is no conflict of jurisdiction in the case. Each creditor had a perfect right to determine for himself in which jurisdiction he would seek his remedy. The difficulties supposed to arise, if in fact any exist, arise after the judgment and decree in enforcing them, and obtaining satisfaction. But if there were any difficulty in this respect as the law stood under the Revised Statutes [of Maine 1840, p. 558, c. 125, § 35] that is removed by the statute of [Maine, August 10] 1848, c. [78. See note at end of case.] The fourth section of that act provides that if there are several actions against the debtor of this privileged character, seeking to enforce a lien against the vessel, no satisfaction shall be made of any of the judgments obtained until there is a judgment in all, and that these shall be paid concurrently, without any preference of one over the other on account of priority of the attachment. This is precisely what would have been done by a court of admiralty, under the law as it stood in the Revised Statutes, without the supplementary act of 1848. All the creditors standing in the same rank of privilege would have been paid concurrently, and no preference would have been given to the creditor who first filed his libel, or commenced his suit at common law.

The act of 1848 (section 2) directs that all attachments of the ship shall be made by the same officer; and the next section provides that if he is disqualified from serving any writ, that any other qualified officer may serve it, and by giving notice to the attaching officer who has the possession, the same right is acquired against the vessel as if the writ had been served by the first officer. This provision of the law applies precisely to the present case. The attaching officer who had the possession of the vessel was not qualified to serve the libel by an arrest of the vessel; and notice to the sheriff by the marshal, that he had a warrant of arrest against the vessel, would operate as an arrest or attachment of the vessel. There is, therefore, no conflict of jurisdiction in the concurrent prosecution of the two suits in the state court and the admiralty, nor does there arise any conflict of authority for the possession after judgment is obtained in levying the executions. By the direct operation of the law, the possession of the sheriff, so far as is necessary to the satisfaction of a decree under the libel, becomes the possession of the marshal. He holds the vessel for the

satisfaction of the creditor who obtains his judgment in the court.

The counsel for the respondent, in support of his plea -to the jurisdiction of the -court, is perfectly correct in the position taken, that a court proceeding in rem can only maintain its jurisdiction when it can reach and act directly on the thing. The -object and end of the suit is to get satisfaction out of the res., and the judgment of the court is against the thing. Unless, therefore, the court can reach the thing, its judgment would be entirely illusory. But in the present case, the process of the -court has reached the thing, or, at least, may reach it effectually by simple notice to the sheriff to hold the ship to respond to any decree the libelant may obtain. This -objection, therefore, fails; nor can I see any of the practical difficulties and dangers of a collision of authorities, in carrying the law into execution, and giving to each party his remedy, that have been suggested by the counsel for the respondent. Plea to the jurisdiction overruled.

[NOTE. Rev. St. Me. 1840, c. 125, § 35, provides that material men and laborers shall have a lien for materials and services furnished in building a ship until four days after the launching thereof, and may secure the same by attachment, which shall have precedence of all other attachments. The act of August 10, 1848, c. 78, is as follows:

["Section 1. When any action shall hereafter be commenced to enforce the lien of a creditor upon a vessel for labor performed, or materials furnished for or on account of such vessel, the officer making the first attachment in such case, shall give notice thereof by filing a return of such attachment within twenty-four hours after making the same with the clerk of the town where such vessel shall be, and leaving a copy thereof with any one of the owners or of the master workmen upon such vessel; and it shall not be necessary at any time before the launching of a vessel, to place a keeper on board of the same for the purpose of preserving the attachment made to secure any such lien.

["Sec. 2. In all actions brought to enforce any such lien, as is mentioned in the preceding section, the service shall be made by a sheriff, deputy sheriff, or a coroner, and all subsequent attachments upon such vessel to secure a lien as aforesaid, made before the expiration of the time within which the first attaching creditor might have enforced his lien, shall be made by the officer who made said first attachment.

["Sec. 3. If the officer who made the first attachment as aforesaid shall be disqualified from serving the writ in any such subsequent action, any other qualified officer may serve such subsequent writ, and shall attach the vessel by giving notice thereof to the first attaching officer, and the claimant, in such case, shall have his judgment satisfied out of the proceeds in the hands of the first attaching officer, in like manner and proportion with the other creditors.

["Sec. 4. No satisfaction shall be made upon any execution that may issue in any of the actions aforesaid, until after final judgment has been entered in all of such actions; and said attachment shall be preserved until the expiration of thirty days after such final judgment; and the officer holding the executions issued upon such judgments for service, shall after final judgment in all of said actions, divide and pay over the proceeds in his hands arising from such attachment to the several judgment creditors aforesaid, in proportion to the amounts of the judgments recovered by them respectively, and not otherwise.

["Sec. 5. All acts and parts of acts inconsistent with the provisions of this act, are hereby repealed."

[The question of the conflicting jurisdiction of federal courts in cases similar to the principal case has been frequently before the federal courts. In Certain Logs of Mahogany, Case No. 2,559, (decided in 1827,) a replevin suit had been begun in a Massachusetts state court before the filing of the libel in the federal court, and from a decree in favor of the libelant an appeal was taken. Story, circuit justice, in rendering an opinion affirming the decree, held that the pendency of the replevin suit was no defense against the libel, for the two suits were not on the same cause of action, nor between the same parties, nor of the same nature; for replevin, though in form in rem, acts in personam as to the judgment. In this case the defense was lis pendens, and there seems to have been· no objection made to the jurisdiction on the ground that the res was beyond the reach of the federal process while in the custody of the sheriff. When a vessel is in the hands of a sheriff under process from a state court, it is beyond the jurisdiction of a federal court sitting in admiralty, and this on the ground that the proceedings in admiralty are in rem, and those in state court in the nature of proceedings in rem, (the case arose in New York,) and therefore the right to maintain the jurisdiction must attach to that tribunal which first exercises it by taking possession of the res. The Robert Fulton, Case No. 11,890. This case was decided by Thompson, circuit justice, in 1826, and although its doctrine was questioned by Wells, district judge, in the case of Ashbrook v. The Golden Gate, Id. 574, it was cited with approval by Curtis, circuit justice, in The Oliver Jordan, Id. 10,503, (decided in 1855,) which was an appeal from the district court for the district of Maine, the circumstances being very similar to those of the principal case. The sheriff of Cumberland county had attached the Oliver Jordan, and thereafter a libel for materials under the Maine lien law was filed, and a warrant of arrest issued from the United States district court in admiralty. Objection to the jurisdiction was overruled by the district court, but on appeal it was held that, since the vessel was rightfully in the custody of the state court, the marshal could not lawfully execute the warrant of arrest, and this because the only mode of preventing a conflict of jurisdiction is "to consider persons and property which are in the custody of the law of a state to be withdrawn from the process of the courts of the United States," and vice versa, except where congress has specially provided for an exercise of the supremacy of the United States laws. An early decision by Ware, district judge, had asserted that this rule did not apply when one claim is privileged over another, and that an attachment under process of a state court created a lien subject to the prior incumbrance of a seaman's claim for wages, though the libel was filed after the attachment was made. Poland v. The Spartan, Case No. 11,246.

[The principle that, when the state and federal jurisdictions are concurrent, the court which first takes possession of the res has exclusive jurisdiction thereof until such possession is relinquished, was recognized by the supreme court in Hagan v. Lucas, 10 Pet. (35 U. S.) 400. In that case slaves had been levied on by a sheriff, but given up on defendant's bond, conditioned to return the property if judgment went against him. The trial court held that under the Alabama law the lien continues after such a bond is given during the pendency of the suit, and the question whether the suit was pending or not was submitted to the jury. Mr. Justice McLean, in affirming the judgment, said: "Had the property remained in the possession of the sheriff under the first levy, it is clear the mar-

shal could not have taken it in execution. The first levy, whether it were made under federal or state authority, withdraws the property from the reach of the process of the other." This was followed in Pulliam v. Osborne, 17 How. (58 U. S.) 471, in which the property (slaves) had been sold by the sheriff, and then seized by the marshal. The court said: "In Alabama the bona fide purchaser at a judicial sale made to enforce a statutory lien takes the property discharged of liens of the same description, whether the subject of the sale be land or personal property. The propriety of this rule is fully vindicated by the statement in Hagan v. Lucas," supra. In a case arising in Mississippi the court reached an opposite conclusion, but only because by the law of that state a release of the property on the defendant's bond operates to suspend the lien, and a levy by the marshal on property so released was therefore lawful. Brown v. Clarke, 4 How. (45 U. S.) 4. In Peck v. Jenness, 7 How. (48 U. S.) 612, a creditor made an attachment under process from a New Hampshire state court, and in bankruptcy proceedings thereafter begun in a federal court it was decreed that the attachment was not a lien, and the sheriff was ordered to deliver the property to the assignee. This decree was pleaded by way of estoppel in the state court, but the objection was overruled, and judgment given for plaintiff, which was affirmed by the state supreme court and by the United States supreme court, on the ground that neither state nor United States courts can take property from the custody of the other. [An important case on this subject arose in Pennsylvania. A sheriff seized a vessel under a foreign attachment in a state court, and thereafter the marshal seized her under admiralty process, although he found the sheriff in possession. The ship was sold in the state court, then sold in admiralty, then replevied by the purchaser under the former sale. Thereupon the purchaser under the admiralty sale filed a libel to regain possession. A decree for libelant was reversed in Taylor v. The Royal Saxon, Case No. 13,803, by Grier, circuit justice, who held that the sheriff's possession was conclusive against the jurisdiction of the federal court, citing and distinguishing Certain Logs of Mahogany, supra. In the replevin suit the state court gave judgment for the purchaser at the sheriff's sale, and this was affirmed in Taylor v. Carryl, 24 Pa. St. (12 Harris) 261, where it was held that the Pennsylvania foreign attachment procedure was in rem, and among equal jurisdictions that is exclusive which is first attached. The United States supreme court affirmed this decision on appeal. Id. 20 How. (61 U. S.) 583; Mr. Chief Justice Taney and Messrs. Justices Wayne, Grier, and Clifford dissenting. This case was followed in Freeman v. Howe, 24 How. (65 U. S.) 450, where it was held that property cannot be taken by a sheriff on a process of replevin out of a marshal's hands, although the latter had made the levy on goods not named in his writ. But the marshal would be liable in trespass in a state court. Buck v. Colbath, 3 Wall. (70 U. S.) 334. The court, state or federal, which first gets jurisdiction, holds it, to the exclusion of the other, in criminal as well as civil cases. Taylor v. Taintor, 16 Wall. (83 U. S.) 366. This was a suit on a forfeited recognizance. [It seems that a United States court may acquire jurisdiction without a seizure by the marshal. In Coggeshall v. U. S., 2 Wall. (69 U. S.) 383, a revenue officer took possession of a slave ship which entered the port of Newport, and retained it until the marshal seized her. In the mean time a sheriff levied an attachment, but it was held that the vessel was in the custody and jurisdiction of the United States while in the hands of the revenue officer, and that the federal district court had jurisdiction. Where a defendant removes a cause from a state to a federal court, and the plaintiff files an amended petition, the cause is beyond the jurisdiction of the state courts, and plaintiff cannot get from an appellate state court a reversal of the order of removal. Home Life Ins. Co. v. Dunn, 19 Wall. (86 U. S.) 214. After a lawful seizure of the res, it is constructively in the jurisdiction of the court until the determination of the cause, although actually wrongfully removed to another district. The Rio Grande v. Otis, 23 Wall. (90 U. S.) 458. [The principle of Taylor v. Carryl, supra, does not apply to libels in admiralty by the owner of a vessel claiming the benefit of the act of congress of 1851, limiting the liability of shipowners for cargo destroyed by fire, for the United States have exclusive jurisdiction under the act. (Mr. Justice Field and Mr. Justice Gray dissenting.) But, in the absence of such statutory exclusive jurisdiction, the principle is applicable without distinction to seizures in admiralty and by execution or attachment. (Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355.) See Mr. Chief Justice Taney's dissenting opinion in Taylor v. Carryl, supra; also to property in the possession of one court for administration, (Tua v. Carriere, 117 U. S. 201, 6 Sup. Ct. 565.) And a seizure by a sheriff of property in the hands of a purchaser at a marshal's sale is void where the process under which the seizure was made was begun while the property was in the custody of the federal court.]